FILED
2026 Mar-18  PM 03:03
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **TRANQUIL FARMS LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 5:24-cv-01497-MHH** |
| | ) | |
| **RENEGADE MANUFACTURING** | ) | |
| **GROUP LLC,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

In this action, plaintiff Tranquil Farms, LLC asserts state law claims against Renegade Manufacturing Group, LLC, David Jon Brown, Craig Linch, Elite Extraction, LLC, and Scott Sauric.  (Doc. 1).  Mr. Brown is a member and CEO of Renegade, and Mr. Linch is an employee of Renegade.  (Doc. 1, p. 3, ¶¶15–16).  Mr. Sauric is the sole member and CEO of Elite.  (Doc. 1, p. 2, 3, ¶¶ 5–6, 16).

Elite Extraction and Mr. Sauric have asked the Court to dismiss Tranquil Farms's claims against them for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.  (Doc. 21).[1]  This opinion addresses the Elite defendants' motion to dismiss.  First, the Court summarizes the standards

---

[1] Because Mr. Sauric acted as Elite's representative for the company's activity relevant to this matter, Mr. Sauric's and Elite's contacts with Alabama are co-extensive.  In this opinion, the Court frequently refers to Mr. Sauric and Elite Extraction collectively as the "Elite defendants."

district courts use to evaluate motions to dismiss for lack of personal jurisdiction. Then, consistent with those standards, the Court describes the relevant jurisdictional facts, describing conflicting facts in the light most favorable to Tranquil Farms. Finally, the Court examines the jurisdictional facts and the applicable law to determine whether it may exercise jurisdiction over the Elite defendants in this matter.

***

Under Rule 12(b)(2), a defendant may challenge a federal court's authority to exercise jurisdiction over the defendant because of the defendant's lack of contact with the federal forum.  When a defendant moves to dismiss for lack of personal jurisdiction, a defendant typically asserts that it would be unfair to have to defend against the plaintiff's claims in the forum in which the plaintiff filed suit because the defendant is not at home in the forum and has not acted in the forum in a way that would cause the defendant to expect to have to litigate there.

A plaintiff who sues a non-resident defendant "bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013) (quoting *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)).  A district court must accept as true the jurisdictional allegations in the plaintiff's complaint unless "a defendant challenges personal jurisdiction 'by

2

submitting affidavit evidence in support of its position.'" *Louis Vuitton Malletier, S.A.*, 736 F.3d at 1350 (quoting *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990)). If a defendant submits jurisdictional affidavits, then the burden returns to the plaintiff to provide evidence that supports the district court's exercise of jurisdiction over the defendant. *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006). When the parties present conflicting evidence, a district court "must construe all reasonable inferences in favor of the plaintiff." *Stubbs*, 447 F.3d at 1360.

The Court employs a two-part inquiry to determine whether it has personal jurisdiction over the Elite defendants. The Court examines whether Alabama's long-arm statute authorizes an exercise of personal jurisdiction, and if so, whether that exercise of jurisdiction would violate the Due Process Clause of the United States Constitution. *Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 925 (11th Cir. 2007). In Alabama, "the two inquiries merge, because Alabama's long-arm statute permits the exercise of personal jurisdiction to the fullest extent constitutionally permissible." *Sloss Indus. Corp.*, 488 F.3d at 925 (citing ALA. R. CIV. P. 4.2(b)); *see also Ex parte Edgetech I.G., Inc.*, 159 So. 3d 629, 633 (Ala. 2014). Therefore, the Court must consider the limits of due process. *Mut. Serv. Ins. Co. v. Frit Indus., Inc.*, 358 F.3d 1312, 1319 (11th Cir. 2004).

3

The Fourteenth Amendment limits a district court's jurisdiction over a defendant to instances where the defendant has "certain minimum contacts with [the State] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Goodyear Dunlop Tire Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011) (quoting *International Shoe Co. v. State of Wash., Office of Unemployment Compensation and Placement*, 326 U.S. 310, 316 (1945)) (alteration in *Goodyear*).  Thus, a district court may adjudicate any cause of action involving a defendant who has such systematic and continuous contacts that the defendant essentially is "at home" in the forum state.  *See Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (internal quotation omitted).  But for a district court to exercise jurisdiction over a non-resident defendant, the defendant's conduct in a forum must "relate to" the plaintiff's claims in a manner that establishes "an affiliation between the forum and the underlying controversy."  *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255, 262 (2017); *see also Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 362 (2021).

\*\*\*

Tranquil Farms is a licensed hemp farming and CBD distillate supplier in Alabama.  (Doc. 1, p. 1, ¶ 1; Doc. 24-1, pp. 1, 3, ¶¶ 2-3, 5).  Elite Extraction "is a small company" in Utah that "engages in the business of processing CBD distillate

4

into CBD isolate." (Doc. 21-1, p. 2, ¶¶ 3, 4). Tranquil Farms's claims concern the defendants' processing and sale of Tranquil Farms's hemp distillate. (Doc. 1).

In late 2022 or early 2023, Mr. Brown, a former CEO of Elite Extraction and the current CEO of Renegade, contacted Mr. Sauric, the current CEO of Elite Extraction. (Doc. 21-1, pp. 2–3, ¶¶ 5, 6). Mr. Brown "asked if Elite would be interested [in] processing CBD distillate for Renegade." (Doc. 21-1, p. 3, ¶ 6). Mr. Sauric indicated that "Elite was interested" and "any agreement . . . would need to go through Fuzion, with whom Elite had a relationship." (Doc. 21-1, p. 3, ¶ 6). In April 2023, Renegade and Fuzion executed a "CBD Isolate Services Agreement." (Doc. 21-1, p. 3, ¶ 6; Doc. 21-2). At the time, Fuzion's primary address was in Wyoming. (Doc. 21-2, p. 2).

Sometime in 2023, Tranquil Farms's Matthew Rizzio met Mr. Brown "through mutual industry brokers." (Doc. 24-1, p. 2, ¶ 4). Mr. Brown introduced Mr. Rizzio to Mr. Sauric. (Doc. 24-1, p. 2, ¶ 4). Mr. Sauric "presented himself as [Mr.] Brown's business partner," and the men "consistently behaved and communicated as though they were jointly offering processing services as part of a single operation." (Doc. 24-1, p. 2, ¶ 4).

Mr. Brown, Mr. Sauric, and Mr. Rizzio "discussed a potential arrangement" for Tranquil Farms to "supply CBD distillate for processing into isolate and sale." (Doc. 24-1, p. 2, ¶ 4). Mr. Rizzio communicated with Mr. Sauric and Mr. Brown

from Alabama via "phone [calls], email[s], and virtual meetings." (Doc. 24-1, p. 3, ¶ 5). Mr. Rizzio informed Mr. Brown and Mr. Sauric that Tranquil Farms's operations were based in Alabama and that Tranquil Farms's distillate was "derived from hemp cultivated and refined in Alabama." (Doc. 24-1, p. 3, ¶ 5). Mr. Brown asked Tranquil Farms to "supply all distillate in its inventory" for processing into isolate and sale, with "the sales proceeds remitted to Tranquil." (Doc. 24-1, p. 3, ¶ 6).

Because Mr. Rizzio "was hesitant to entrust such a large quantity in an initial transaction," Mr. Brown and Mr. Sauric invited Mr. Rizzio to tour the facility in Utah "where Tranquil's distillate would be processed." (Doc. 24-1, p. 3, ¶ 6; *see* Doc. 21-1, p. 3, ¶ 10). Mr. Sauric and Mr. Brown "picked [Mr. Rizzio] up from the airport and drove [him] to the facility." (Doc. 24-1, p. 3, ¶ 7). After seeing signs for Elite Extraction, Mr. Rizzio asked about Renegade's involvement in the facility. (Doc. 24-1, p. 3, ¶ 8). Mr. Sauric and Mr. Brown represented "that Elite and Renegade were indistinguishable for all practical purposes, and represented themselves as working together in a unified operation." (Doc. 24-1, p. 3, ¶ 8).

After the processing facility tour, Tranquil Farms agreed to ship "Alabama-grown distillate valued at over $100,000 for processing and sale." (Doc. 24-1, p. 3, ¶ 9). When he returned to Alabama, Mr. Rizzio "coordinated the shipment" of distillate to the Utah facility and "communicated directly with [Mr.] Sauric" from

Alabama.  (Doc. 24-1, p. 3, ¶ 10).  Mr. Sauric received an email regarding the certifications of analysis concerning the processing.  (Doc. 21-1, pp. 3-4, ¶ 10; Doc. 24-1, p. 3, ¶ 10).  Renegade "arranged for processing of the distillate" from Tranquil Farms by Fuzion, and Fuzion had Elite process the distillate.  (Doc. 21-1, p. 3, ¶ 8; Doc. 21-3, p. 2).

After Tranquil sent its first shipment of distillate for processing, someone "who identified himself as an employee of Elite Extraction" contacted Mr. Rizzio to ask Tranquil for additional distillate.  (Doc. 24-1, p. 4, ¶ 12).  Mr. Rizzio refused because Tranquil did not receive payment for the initial shipment.  (Doc. 24-1, p. 4, ¶ 12).

Elite did not "bill[] Tranquil for any services" and did not "receive[] any payment from Tranquil."  (Doc. 21-1, p. 4, ¶ 10).  Mr. Sauric asserts that "Elite is not a business partner of Renegade," (Doc. 21-1, p. 4, ¶ 11); Elite invoiced "Fusion River" for distillate that Elite processed, (Doc. 21-3).  Elite did not pay Tranquil for the distillate shipped to the facility.  (Doc. 24-1, p. 3, ¶ 11).  Mr. Sauric "has never been to the state of Alabama," and neither Mr. Sauric nor Elite has conducted business in Alabama.  (Doc. 21-1, p. 2, ¶ 1; *see also* Doc. 21-1, p. 4, ¶ 12).  Elite does not have employees in Alabama and has not directed marketing or advertising "to anyone in Alabama."  (Doc. 21-1, p. 4, ¶ 12).

***

A district court may exercise personal jurisdiction over nonresident defendants when "(1) the plaintiff's claims 'arise out of or relate to' one of the defendant's contacts with the forum state; (2) the nonresident defendant 'purposefully availed' itself of the privilege of conducting activities within the forum state; and (3) the exercise of personal jurisdiction is in accordance with traditional notions of 'fair play and substantial justice.'" *Del Valle v. Trivago GMBH*, 56 F.4th 1265, 1275 (11th Cir. 2022) (quotation omitted).

Tranquil Farms's claims arise out of the defendants' contacts with Alabama. Drawing all reasonable inferences in favor of Tranquil Farms, Mr. Brown and Mr. Sauric solicited Tranquil Farms, an Alabama-based business, to enter an agreement that would financially benefit the defendants. To encourage Tranquil Farms to enter the agreement, Mr. Brown and Mr. Sauric represented that they were business partners, (Doc. 24-1, p. 2, ¶ 4), invited Mr. Rizzio to Utah to tour the processing facility, (Doc. 24-1, p. 3, ¶ 6; *see* Doc. 21-1, p. 3, ¶ 10), met Mr. Rizzio at the airport and brought him to the facility, (Doc. 24-1, p. 3, ¶ 7), and represented to Mr. Rizzio "that Elite and Renegade were indistinguishable for all practical purposes, and represented themselves as working together in a unified operation." (Doc. 24-1, p. 3, ¶ 8). Tranquil Farms shipped hemp distillate from Alabama to Mr. Brown and Mr. Sauric's companies for processing. Though the distillate processing occurred

in Utah, payment for the hemp distillate was due in Alabama.  Tranquil Farms's claims concern non-payment for the hemp distillate.  Thus, Tranquil Farms's claims in this action arise out of Mr. Sauric's and Mr. Brown's contacts with an Alabama company to obtain distillate shipped from Alabama.

Additionally, Mr. Sauric and Elite purposefully availed themselves of Alabama.  District courts apply two tests to determine whether a defendant has purposefully availed himself of the forum state:  the effects test and the minimum contacts test.  *Valle*, 56 F.4th at 1275.  Under the effects test, a defendant purposefully avails himself of a forum state when he performs an intentional tortious act "aimed at the forum state," and the act "caused harm that the defendant should have anticipated would be suffered in the forum state."  *Valle*, 56 F.4th at 1276 (citing *Licciardello v. Lovelady*, 544 F.3d 1280, 1285 (11th Cir. 2008)).  For example, in *Calder v. Jones*, 465 U.S. 783 (1984), a magazine editor who lived and worked in Florida reviewed and approved an allegedly defamatory story that "concerned the California activities of a California resident" and "was drawn from California sources."  *Calder*, 465 U.S. at 786, 788–89.  The journalist did not travel to California in connection with the story and had "no other relevant contacts" with the state.  *Calder*, 465 U.S. at 786. The California resident suffered "the brunt of the harm" to her reputation and emotional well-being in California.  *Calder*, 465 U.S. at 789.  Therefore, the United States Supreme Court reasoned that because "California

9

[was] the focal point both of the story and the harm suffered" a California court could exercise personal jurisdiction over the Florida journalist "based on the 'effects' of [his] Florida conduct in California." *Calder*, 465 U.S. at 789.

Defendants do not purposefully avail themselves of a forum solely because a forum resident suffers an injury. *Walden v. Fiore*, 571 U.S. 277, 290 (2014). In *Walden*, a DEA agent seized cash in the Atlanta airport from individuals who were traveling to Las Vegas, Nevada. *Walden*, 571 U.S. at 279–80. The individuals sued the agent in a Nevada federal court for alleged violations of their constitutional rights. *Walden*, 571 U.S. at 280. Although the agent knew that the plaintiffs were traveling to Nevada and owned a home there, the Supreme Court found that the agent lacked sufficient minimum contacts with Nevada to subject him to personal jurisdiction in the forum. *Walden*, 571 U.S. at 279–280. The Supreme Court described the connection between the agent's conduct and Nevada as "attenuated" and explained that the agent could not be subjected to jurisdiction in a forum state solely because he "directed his conduct" at individuals who he knew had a strong connection to the forum. *Walden*, 571 U.S. at 286, 288–90.

The record here is more akin to the record in *Calder*, not the record in *Walden*. In *Walden*, the agent's sole contact with the plaintiffs occurred in Atlanta. There was no evidence that the agent's conduct was directed or related to Nevada. In contrast, in *Calder*, the magazine editor reviewed and approved an article intended

10

to financially benefit her magazine and understood that the article "concerned the California activities of a California resident" such that the story's publication would trigger effects in California.  Similarly, Mr. Sauric helped Mr. Brown solicit Tranquil Farms, through contacts directed at Mr. Rizzio in Alabama, to ship hemp distillate from Alabama to Utah to benefit Renegade and Elite in Utah.  Elite knew that Tranquil Farms was based in Alabama and intentionally pursued the Alabama company to form a business relationship for the benefit of Elite and Renegade.  On behalf of Elite and Renegade, Mr. Sauric and Mr. Brown allegedly fraudulently induced Tranquil to contract with Renegade and ship an Alabama-grown product to Utah for processing by Elite and Renegade, companies that held themselves out as "a unified operation."  (Doc. 24-1, p. 3, ¶ 8; *see* Doc. 1, pp. 5-6, Counts II-III).

The Elite defendants' conduct targeted a forum resident, much like the editor's conduct in *Calder*.  Under these circumstances, the Elite defendants should have anticipated that Tranquil would suffer economic harm in Alabama because of the Elite defendants' alleged intentional tortious acts aimed at the forum state.  *See Valle*, 56 F.4th at 1276; *Calder*, 465 U.S. at 789.[2]  Therefore, Tranquil Farms has

---

[2] Under Alabama law, "[m]isrepresentations of a material fact made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently and acted on by the opposite party, constitute legal fraud."  ALA. CODE § 6-5-101. When a misrepresentation is made willfully or recklessly, fraud is an intentional tort.  *See Altmayer v. City of Daphne*, 613 So. 2d 366, 369 (Ala. 1993) (holding that a plaintiff could not bring claims for willful and reckless misrepresentation against a municipality because municipalities are not liable for the intentional torts of their agents); *c.f. Ex parte City of Montgomery*, No. SC-2024-0619, 2025 WL 2487401, at *5 (Ala. Aug. 29, 2025) (indicating that "fraudulent misrepresentation

demonstrated that the Elite defendants purposefully availed themselves of Alabama under the effects test.

The result is the same under the minimum contacts test. Under that test, a district court must "assess[] the nonresident defendant's contacts with the forum state and ask[] whether those contacts (1) are related to the plaintiff's cause of action; (2) involve some act by which the defendant purposefully availed himself of the privileges of doing business within the forum; and (3) are such that the defendant should reasonably anticipate being haled into court in the forum." *Valle,* 56 F.4th at 1276. Under this test, a district court must "identify all contacts between the nonresident defendant and the forum state and ask whether, individually or collectively, those contacts satisfy the relevant criteria." *Valle*, 56 F.4th at 1276.

A defendant does not purposefully avail himself of a forum state when his "sole contact" is contracting with a forum resident, but a defendant may purposefully avail himself of a forum state when he contracts with the forum resident and has "further contacts or plus factors" that connect him to the forum. *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1268–69 (11th Cir. 2010). Relevant plus factors include "a defendant's initiating the contractual relationship, visiting the plaintiff's factory to assess or improve quality, sending materials to the

---

is not always an intentional tort" and explaining that fraud based on "mistaken and innocent" misrepresentation is not an intentional tort).

12

plaintiff for inspection or use in shipping, [and] participating in the manufacturing process." *Diamond Crystal Brands, Inc.*, 593 F.3d at 1269. Plus factors establish that the defendant "deliberate[ly] affiliat[ed]" with the forum state. *Diamond Crystal Brands, Inc.*, 593 F.3d at 1269 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 482 (1985)) (alteration in *Diamond Crystal Brands*). This ensures that the "quality of the interstate transaction" is not so "random" or "fortuitous" that the defendant should not "reasonably anticipate defending a suit there." *Burger King Corp.*, 471 U.S. at 486.

Here, through Mr. Sauric, Elite solicited an Alabama company to supply hemp distillate for processing and sale. The Elite defendants induced Tranquil Farms to agree to supply the hemp by inviting Mr. Rizzio to visit a processing plant in Utah and failed to disclose the actual relationship among Renegade, Elite, and non-party Fuzion. Therefore, the "quality and nature" of Elite and Mr. Sauric's relationship with Tranquil is not too "random" or "fortuitous" for them to reasonably anticipate defending a suit in Alabama.

Because Tranquil Farms has established that the Elite defendants have sufficient contacts with Alabama for this Court to exercise personal jurisdiction over these defendants in this matter, to succeed on their motion to dismiss, the Elite defendants must "make a 'compelling case' that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Valle*, 56 F.4th 1275.

13

To determine whether the exercise of personal jurisdiction over a defendant comports with fair play and substantial justice, a district court must consider "(1) the burden on the defendant; (2) the forum's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; and (4) the judicial system's interest in resolving the dispute." *Louis Vuitton Malletier, S.A*, 736 F.3d at 1358.

The Elite defendants assert that "haul[ing] [them] into court all the way across the country would clearly offend traditional notions of fair play and substantial justice," (Doc. 21, p. 14), but the Elite defendants do not explain why defending this suit in Alabama would impose a burden that would offend traditional notions of fair play and substantial justice. Alabama "has a 'manifest interest in providing effective means of redress for its residents.'" *Diamond Crystal Brands, Inc.*, 593 F.3d at 1274 (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)). This interest may "justify even . . . serious burdens" on non-resident defendants. *S & Davis Int'l, Inc. v. The Republic of Yemen*, 218 F.3d 1292, 1305 (11th Cir. 2000) (quoting *Asahi Metal Industry Co. v. Superior Court of California,* 480 U.S. 102, 114 (1987)). Accordingly, the Elite defendants have not established a "compelling case" that the burden of litigating in Alabama would offend traditional notions of fair play and substantial evidence.

14

***

For these reasons, the Court has specific jurisdiction over Mr. Sauric and Elite Extraction for the purpose of resolving Tranquil Farms's claims against them, so the Court denies the Elite defendants' motion to dismiss for lack of personal jurisdiction. (Doc. 21).  The Clerk of Court shall please TERM Doc. 21.

The other defendants to this suit – Renegade Manufacturing LLC, Mr. Brown, and Mr. Linch – have not appeared in this action.  Mr. Brown and Renegade were served on December 3, 2024.  (Docs. 7, 8).  Mr. Linch was served on June 23, 2025. (Doc. 20).  The deadlines for these defendants' responses to the complaint have expired.  *See* FED. R. CIV. P. 12(a)(1)(A)(i).  Within 14 days of this order, Tranquil Farms shall show cause in writing why the Court should not dismiss the claims against the Renegade defendants for failure to prosecute.

**DONE** and **ORDERED** this March 18, 2026.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE

15